ORIGINAL

John R. Nelson, WSBA # 16393
J. Michael Keyes, WSBA # 29215
PRESTON GATES & ELLIS LLP
601 West Riverside Avenue, #1400
Spokane, WA 99201-0636
Telephone: (509) 624-2100
Facsimile: (509) 456-0146

Attorneys for Defendants

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUL 26 2004

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON AT SPOKANE

| | |
|---|---|
| DANIEL T. REINER,<br><br>      Plaintiff,<br><br>v.<br><br>KEN BAGDASARIAN and JANE DOE BAGDASARIAN and the marital community thereof; WHEEL FINISHING SYSTEMS, LLC, a California Limited Liability Company; and UNITED FINISHING SYSTEMS, INC., a California corporation,<br><br>      Defendants. | No. CV-04-0153 LRS<br><br>DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS |

Defendants, KEN BAGDASARIAN, VICTORIA BAGDASARIAN, WHEEL FINISHING SYSTEMS, LLC and UNITED FINISHING SYSTEMS, INC., answer Plaintiff's Complaint as follows:

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 1

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

1. Defendants are without sufficient knowledge as to the truth or falsity of this statement and, therefore, deny same.

2. Defendants admit the first sentence of this paragraph. Defendants deny the second sentence as not all of the named Defendants were either founders or officers of Wheel Finishing Systems, LLC and/or United Finishing Systems, Inc. Defendants admit that Wheel Finishing Systems, LLC is a California Limited Liability Company and that United Finishing Systems, Inc. is a California Corporation. The last sentence of this paragraph is denied.

3. Defendants deny that they physically transacted business or committed any tortious acts in Washington (or elsewhere, for that matter).

4. Defendants admit that Ken Bagdasarian is the inventor and patent owner of a machine that finishes aluminum wheels by an automated process, rather than by manual labor. Defendants also admit that, beginning in the spring of 2003 and continuing to date, Mr. Bagdasarian has been looking for suitable investors in a company to bring his invention to market.

5. Defendants deny the averments of Paragraph 5 of the complaint, which purport to set forth the facts regarding Reiner's delivery to Mr. Bagdasarian of the check attached to the Complaint, as each averment therein is materially false and/or misleading.

6. Defendants deny paragraph 6 of the Complaint.

7. Defendants are without knowledge as to the truth or falsity of the first sentence of paragraph 7 of the Complaint, and, therefore, deny same. The second sentence is denied. The third sentence is admitted. The fourth sentence is admitted except for the portion that states that Bagdasarian would call in a "few" days with an

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 2

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

answer. The fifth sentence is admitted. The sixth sentence is denied insofar as it suggests that Bagdasarian was legally obligated to return any money to Reiner.

8. Defendants deny paragraph 8 of the Complaint.

9. Defendants admit that Mr. Bagdasarian deposited the check on August 19, 2003, but deny all other averments of this paragraph.

10. Defendants deny paragraph 10 of the Complaint.

11. Defendants deny paragraph 11 of the Complaint.

12. Defendants deny paragraph 12 of the Complaint.

13. Defendants deny paragraph 13 of the Complaint.

## AFFIRMATIVE AVERMENTS OF FACT

1. As previously averred, Mr. Bagdasarian invented and owns the patent on a machine that polishes aluminum wheels. Presently, aluminum wheels are typically polished by manual labor, primarily in Mexico or China. Mr. Bagdasarian's invention eliminates the need for that backbreaking, dirty and unhealthy work, greatly reducing transportation and labor costs while improving the finished product by eliminating the random variations attendant to manual polishing. Mr. Bagdasarian's invention revolutionizes the wheel polishing process and has no substantial effective competition.

2. Mr. Bagdasarian's first patent on the wheel finishing machine was issued April 2, 2002. By the end of 2002 Mr. Bagdasarian had built and successfully tested a prototype of the machine.

3. In early 2003 Mr. Bagdasarian began looking for investors to fund the start-up costs of a new business to bring his invention to market, which he estimated at $3 million over the first three years. Mr. Bagdasarian began working with Mr. Jeff

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 3

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

Spain, a former investment banker with experience in finding venture capital for start-up companies. In the Spring of 2003 Mr. Spain assisted Mr. Bagdasarian to prepare a "white paper" and confidential private placement memorandum on "Wheel Finishing Systems, LLC," the company they planned to form in order to commercialize the patented wheel finishing machine.

4. By July 2003 Mr. Spain and Mr. Bagdasarian had secured "hard" investment commitments for $2 of the $3 million dollars Mr. Bagdasarian estimated would be needed to start Wheel Finishing Systems, including $1 million from Mike Bowlin and his son. Mr. Bowlin is the former Chairman and CEO of Arco, and has substantial experience in the retail wheel industry.

5. In early July 2003 Mr. Spain contacted Mr. Eric Johnson about the investment opportunity in Wheel Finishing Systems. Upon Mr. Bagdasarian's information and belief, Mr. Spain and Mr. Johnson were each affiliated at the time with The Victory Group, a venture capital company in which Reiner holds an interest. Mr. Johnson was excited about the project, and told Spain to contact Reiner about the opportunity.

6. In mid-July 2003 Mr. Spain approached Reiner about investing in Wheel Finishing Systems, LLC. Mr. Spain advised Reiner about the terms they had reached with Mr. Bowlin and his son, and invited Reiner to meet with Mr. Bagdasarian about participating as an additional investor in Mr. Bagdasarian's company.

7. Reiner came to Los Angeles and met with Mr. Bagdasarian about his invention and proposed business model at the offices of The Victory-Group in San Pedro, California, on Friday, July 25, 2003. At that meeting Reiner professed disinterest in the opportunity, saying that he did not like the proposed business model.

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 4

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

8. Although he had said he was not interested in Wheel Finishing Systems Reiner continued to communicate with Mr. Spain about investing in the company. However, Reiner was not interested in merely a portion of the investment opportunity. Instead, Reiner wanted to fund all of the company's financing requirements, and wanted substantial control over the company's operations. Mr. Spain told Reiner that Mr. Bagdasarian did not want to "kick out" the Bowlins and other investors who had already made firm financing commitments to the company, but suggested that Reiner could probably still obtain a 2 million dollar position in the company.

9 On or about July 30, 2003, Reiner called Mr. Bagdasarian directly and asked Mr. Bagdasarian to come to Reiner's estate outside Newport, Washington, for a "private" meeting to consider Reiner's proposal for funding Wheel Finishing Systems. Although Mr. Spain warned against it, Mr. Bagdasarian agreed to come to Washington and hear Mr. Reiner's proposal. At this time Mr. Reiner knew that all the terms of the deal with the Bowlins had been heavily negotiated over several months and was now agreed upon; that extensive paperwork had been prepared and completed by the parties; that this paperwork had been reviewed and approved by the parties and their attorneys; and that the execution of this paperwork, including a binding written agreement, was imminent.

10. On August 4, 2003, Mr. Bagdasarian traveled to Reiner's 2200 acre estate near Newport in order to hear Mr. Reiner's proposal. On the first day Reiner showed Mr. Bagdasarian a window manufacturing plant, in which he was a partner, then his private lake and the work being done on his new 50,000 square foot house. Mr. Bagdasarian stayed that night in the guest house at the estate. The next day Reiner presented his proposal to provide *all* of the financing necessary to capitalize Wheel

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 5

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

Finishing Systems, to the exclusion of the Bowlins and other investors from whom Mr. Bagdasarian already had hard commitments. When Mr. Bagdasarian expressed reservations about losing the Bowlins' contribution to the company's financing needs, Reiner bragged that he was "worth more than 100 million dollars," and told Mr. Bagdasarian that he could "write a check" for *six* million dollars if needed, instead of the three million dollars Mr. Bagdasarian had estimated would be necessary to bring the company to a positive cash flow position. Reiner also told Mr. Bagdasarian that Reiner could have the financing deal done in "five days," but that the funding through Mr. Bagdasarian's other investors would take "two months."

11. The material terms of Reiner's proposal were as follows:

(a) The two men would commercialize Mr. Bagdasarian's invention through his existing company Wheel Finishing Systems, LLC ("WFS"). WFS would immediately rent commercial space in Los Angeles and have the prototype machine transferred to that location;

(b) Mr. Bagdasarian and Reiner would own fifty-five percent and forty-five percent of WFS, respectively, through separate LLCs that they would form to hold their interests. Mr. Bagdasarian would be able to sell interests in his LLC to certain named individuals, including Michael Schnieder and Greg Karapetian, and would obtain releases from other individuals who might claim an interest in WFS;

(c) As his contribution to WFS, Reiner would immediately provide $2,000,000 to WFS – $150,000 in equity and $1,850,000 as a loan -- although Reiner understood and agreed that the new company would need more money than that over the next four years. In fact, Reiner undertook the responsibility

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 6

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

to lead in obtaining that additional needed capital.

    (d) As his contribution to WFS, Bagdasarian would transfer all patents, know-how or other intellectual property owned by him and UFS to WFS.

    (e) Bagdasarian would be paid a salary of $20,000 per month for his work for the company, beginning immediately, while Reiner would be paid nothing.

12. Mr. Bagdasarian asked for time to consider Reiner's proposal, and expressed reservations about abandoning the other investors from whom he already had hard commitments. In response, and in order to induce Mr. Bagdasarian to accept his proposal, Reiner produced a checkbook and wrote a check to Wheel Finishing Systems in the amount of $150,000. Reiner presented the check to Mr. Bagdasarian as Reiner's "equity" investment in the company, and explained that he wanted Mr. Bagdasarian to take the check and have the funds in order to get the business plan going forward immediately. Reiner knew that Mr. Bagdasarian had invested a lot of his personal capital in the invention and needed money both to get the business going and to pay his own living expenses. Reiner told Mr. Bagdasarian that he was providing the funds immediately in order to show his "good faith" and his "commitment" to the agreement.

13. Shortly before Mr. Bagdasarian was to leave for the airport Reiner suggested that they should record the terms of their agreement in a written Memorandum of Understanding (MOU). Reiner prepared the MOU, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference.

14. In reliance upon Reiner's representations and the parties' agreement as

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 7

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

reflected in the written MOU Mr. Bagdasarian returned home, advised Mr. Spain to terminate discussions with the other investors in Wheel Finishing Systems, and began performing under the agreement. Mr. Bagdasarian obtained releases from the other individuals who had a prospective interest in Wheel Finishing Systems, provided documentation as requested by Reiner, and searched to locate a building for the new company.

15. On August 15, 2003, Reiner came to Mr. Bagdasarian's offices in California to discuss the documents needed to implement performance of the parties' agreement. Mr. Bagdasarian's partner Mike Thomas was also present at this meeting. At this meeting Reiner expressed dismay that Mr. Bagdasarian had not yet deposited the check and begun securing manufacturing space, purchasing equipment, and otherwise "get going." Mr. Reiner implored Mr. Bagdasarian to do so as soon as possible, lest some "competition" get the jump on Wheel Finishing Systems.

16. On August 18, 2003, in accordance with the language of the MOU, Reiner presented Mr. Bagdasarian with a second draft of the MOU prepared by Reiner and his attorney, Scott Smith of Paine, Hamblen, Coffin, Brooke & Miller LLP. Mr. Bagdasarian signed the revised MOU that evening and returned it to Reiner by facsimile the next morning. A true and correct copy of the revised MOU is attached hereto as Exhibit B and is incorporated herein by reference. After signing and returning the written agreement, and in reliance upon Reiner's statements and representations consistent therewith, Mr. Bagdasarian opened a bank account and deposited Reiner's check into Wheel Finishing System's account.

17. Mr. Bagdasarian continued to perform under the parties' agreement. He created his new LLC, stopped the day to day operation of UFS, began tearing down

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 8

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

equipment and packing supplies and materials in preparation for moving the company's premises, located property for the new company, obtained releases from other individuals with claims to an interest in Wheel Finishing Systems, and provided Reiner documentation pursuant to the agreement. In accordance with the paragraph 11 of the MOU, Mr. Bagdasarian also reached agreements to sell membership interests in his new LLC with Michael Schneider and Greg Karapetian for a total expectancy to him of $1,000,000.

18. Although Reiner and Mr. Bagdasarian had agreed that time was of the essence and expressly undertook to expedite execution of documents to move the business forward– a term upon which Reiner knew Mr. Bagdasarian had relied in accepting Reiner's proposal in lieu of the other financing he had previously arranged -- Reiner failed to perform as promised.

19. Ultimately, Reiner presented Mr. Bagdasarian with documents that did not require Reiner to find or provide additional financing as the parties had agreed, and which would have allowed Reiner to foreclose on Mr. Bagdasarian's patent if Wheel Finishing Systems was unable to repay the initial $1,850,000 debt financing within three years, even if the company was doing well. Mr. Bagdasarian objected to these documents as inconsistent with the parties' actual agreement and express understanding that the company would likely need at least three million dollars over the first three or four years, and that Reiner would have responsibility to find or provide that additional capital. In response to Mr. Bagdasarian's objections, Reiner admitted that the documents provided did not comport with the parties' original intent and agreement, as reflected by the MOU. Nonetheless, over the next several weeks, Reiner failed and refused to provide documents that *did* comport with the parties'

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 9

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

actual agreement.

20. Ultimately, yet *another* month passed, and it became clear to Mr. Bagdasarian that Reiner had no intention of performing in accordance with the terms of their agreement. Although the parties had expressly agreed that the new company would require more than $2,000,000 to successfully start-up, and that Reiner had responsibility to obtain or provide such additional capital, Reiner refused to incorporate language reflecting that agreement in the written documents.

21. On October 3, 2003, Mr. Bagdasarian notified Reiner that Mr. Bagdasarian would no longer negotiate Reiner's attempt to change the terms of the parties' agreement. Reiner knew that Mr. Bagdasarian has cashed the check for Reiner's equity investment in Wheel Finishing Services. Nonetheless, Reiner never responded to Mr. Bagdasarian's notice of breach, and never attempted to cure his breach of the parties' agreement or to ameliorate the injury and damages Mr. Bagdasarian had sustained as a consequence of his breach.

22. On February 11, 2004, Reiner called Mr. Bagdasarian and falsely asserted that he did not know that Mr. Bagdasarian had cashed the $150,000 check Reiner had delivered six months earlier. Mr. Bagdasarian was stunned by Reiner's untruth. Mr. Bagdasarian had no plan to repay the money, as Reiner had suddenly demanded, because Reiner's payment had been made as an equity investment in Wheel Finishing Systems, rather than as a loan. Mr. Bagdasarian advised Reiner as much in the email referenced by Reiner's complaint in this action.

## AFFIRMATIVE DEFENSES

1. Plaintiff has failed to state a claim upon which relief can be granted.

2. Reiner's claim for breach of contract is barred by his own anticipatory

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 10

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

breach.

3. Reiner is equitably estopped to assert claims for breach of contract, conversion or unjust enrichment against Mr. Bagdasarian.

4. Reiner's damages, if any, have been proximately caused by his own acts and failures to act.

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 11

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

## COUNTERCLAIMS

1. Breach of Contract. Reiner breached the parties' contract by failing and refusing to perform in accordance therewith. As a direct and known consequence of Reiner's breach, Mr. Bagdasarian has suffered over one million dollars in damages from his lost expectancy interest, together with additional damages in amounts spent pursuant to the contract in an amount to be proved at trial, loss of business in UFS, and lost wages in an amount to be proved at trial.

2. Promissory Estoppel. Reiner made promises and representations that he would perform specific acts regarding the financing of Wheel Finishing Systems, knowing and intending that Mr. Bagdasarian would rely thereon. Mr. Bagdasarian did rely on Reiner's promises and representations, and reasonably so. Reiner failed to act and perform as he had promised and represented he would. Reiner's failure to act in accordance with the promises and representations he made, and upon which he knew Mr. Bagdasarian was relying, has proximately caused Mr. Bagdasarian damages in an amount to be proved at trial, but known to exceed $150,000.

## PRAYER FOR RELIEF

WHEREFORE, Defendants and Counterclaimants pray for judgment against Reiner as follows:

A. That Plaintiff take nothing by way of his Complaint;

B. That Mr. Bagdasarian be awarded damages against Reiner in an amount to be proved at trial, but which is known to exceed $1,150,000;

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 12

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

C. For any further relief as this court deems equitable and just.

DATED this 14th day of July, 2004.

PRESTON GATES & ELLIS LLP


By _____
John R. Nelson, WSBA # 16393
J. Michael Keyes, WSBA # 29215
Attorneys for Defendants

## **VERIFICATION**

Ken Bagdasarian does hereby declare under penalty of perjury according to the laws of the United States that he has read the foregoing Answer, Affirmative Defenses and Counterclaims, has personal knowledge of the facts averred therein, and knows them to be true and accurate as stated.

Dated this _____ day of July, 2004, at _____, California.


_____
Levon Kenneth Bagdasarian

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 13

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

C. For any further relief as this court deems equitable and just.

DATED this 14th day of July, 2004.

PRESTON GATES & ELLIS LLP

By _____
John R. Nelson, WSBA # 16393
J. Michael Keyes, WSBA # 29215
Attorneys for Defendants

## **VERIFICATION**

Ken Bagdasarian does hereby declare under penalty of perjury according to the laws of the United States that he has read the foregoing Answer, Affirmative Defenses and Counterclaims, has personal knowledge of the facts averred therein, and knows them to be true and accurate as stated.

Dated this _21_ day of July, 2004, at _Whittier_, California.

_____
Ken L. Bagdasarian

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 13

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146

## **CERTIFICATE OF SERVICE**

I hereby declare, under penalty of perjury under the laws of the State of Washington, that on this 26 day of July, 2004, I caused a true and correct copy of the foregoing ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS to be sent to the following counsel:

| | |
|---|---|
| William Schroeder<br>Gregory S. Johnson<br>Paine Hamblen Coffin Brooke & Miller LLP<br>717 West Sprague Avenue, Suite 1200<br>Spokane, WA 99201 | ☐ via facsimile<br>☐ via overnight courier<br>☐ via first-class U.S. mail<br>☑ via hand delivery |

*Barb Li'Hon*
Barb Li'Hon

FIRST AMENDED ANSWER, AFFIRMATIVE
DEFENSES & CONTERCLAIMS - 14

PRESTON GATES & ELLIS LLP
601 WEST RIVERSIDE AVENUE
SUITE 1400
SPOKANE, WA 99201-0636
TELEPHONE: (509) 624-2100
FACSIMILE: (509) 456-0146